UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

HAYLEY E.,

                    Plaintiff,

            v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant

---

**DECISION AND ORDER**

6:22-CV-06530 CDH

## INTRODUCTION

Plaintiff Hayley E. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her deceased father John G.'s ("Claimant") application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") (Dkt. 1).[1] Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 10; Dkt. 12; Dkt. 13). For the reasons that follow, the Court denies Plaintiff's

---

[1]     Claimant also filed, and the Commissioner denied, an application for supplemental security income ("SSI") under Title XIV of the Act. (*See* Dkt. 6 at 20). However, as the Court explained in its Decision and Order granting Plaintiff's motion for substitution, such an application "extinguishes when a deceased individual was an adult and had no surviving spouse at the time of his death." (Dkt. 20 at 2 (citing 20 C.F.R. § 416.542(b)(4)). "Because [Claimant] was not married at the time of his death, his Title XVI claim extinguished upon his death." (*Id.*). Accordingly, the Court has not analyzed the denial of Claimant's application for SSI.

motion and grants the Commissioner's motion.

## BACKGROUND

On November 14, 2019, Claimant protectively filed an application for DIB. (Dkt. 60 at 20, 76).[2] His application was initially denied on January 9, 2020, and upon reconsideration on November 10, 2020. (*Id*. at 20, 123-32, 136-59). Claimant requested a hearing before an administrative law judge ("ALJ") (*id*. at 20, 161-65), which was held on August 17, 2021 (*id*. at 36-70). On September 9, 2021, the ALJ issued an unfavorable decision. (*Id*. at 45-56). Claimant sought review from the Appeals Council, which denied his request on September 28, 2022. (*Id*. at 5-11). This action followed. (Dkt. 1).

Claimant died on January 26, 2025. (Dkt. 16-2 at 1). Plaintiff subsequently moved for substitution pursuant to Federal Rule of Civil Procedure 25 (Dkt. 16), and the Court granted her motion on March 16, 2026 (Dkt. 20).

## LEGAL STANDARD

### I.    Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R.

---

[2]    In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

§ 404.1520(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. § 404.1520(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. § 404.1520(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id*. § 404.1509, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id*. § 404.1520(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. § 404.1545.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful

work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. § 404.1520(a)(4)(v).

## II.    Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

## I.    The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in

determining whether Claimant was disabled. Before proceeding to step one, the ALJ found that Claimant met the insured status requirements of the Act through December 31, 2024. (Dkt. 6 at 22).

The ALJ found at step one that Claimant had not engaged in substantial gainful activity since September 30, 2019, the alleged onset date. (*Id.*). The ALJ found at step two that Claimant had the severe impairments of "residual effects of a . . . knee fracture[.]" (*Id.* at 23). The ALJ also found that Claimant had the non-severe impairments of amblyopia of the left eye and hypertension. (*Id.* at 23-24).

The ALJ found at step three that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 24). At step three, the ALJ specifically discussed the criteria of Listing 1.18. (*Id.*).

The ALJ assessed Claimant's RFC and determined that Claimant retained the ability to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that:

> [Claimant] is prohibited from climbing ladders, ropes, and scaffoldings; he is limited to occasional climbing of ramps and stairs; he is limited to occasional balancing, stooping, kneeling, crouching, and crawling; and he needs to avoid concentrated exposure to slippery and uneven surfaces as well as hazardous machinery, unprotected heights and open flames.

(*Id.* at 25). The ALJ then proceeded to step four and found that Claimant was able to perform past relevant work as a "manager-department" and as a stock clerk. (*Id.* at 30). The ALJ accordingly concluded that Claimant was not disabled, as defined in the Act, from September 30, 2019, through the date of the ALJ's decision. (*Id.* at 30).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Legal Error**

Plaintiff argues that the ALJ: (1) "erred at step 4 when accepting the vocational expert's testimony that [Claimant's] past relevant work at Waste Management Resources was a Department Manager, which is generally performed at the sedentary exertional level,"; and (2) erred by "failing to follow the regulations when evaluating the State agency medical opinions." (Dkt. 10-1 at 1). The Court is unpersuaded by these arguments, for the reasons that follow.

A.    **Step Four Determination**

As noted above, the ALJ determined at step four that Claimant was able to perform past relevant work as a "manager-department" and as a stock clerk. (Dkt. 6 at 30). Plaintiff contends that in making this determination, "[t]he ALJ accepted the vocational expert's ('VE's') testimony that that [Claimant] had past work at Waste Management identified as a Manager, Department: Dictionary Occupational Titles ("DOT") code 189.167-022, a sedentary job with an SVP of 7." (Dkt. 10-1 at 10). Plaintiff further argues that "[t]here is no factual basis to support the vocational expert's classification of [Claimant's] past relevant work" and that there was "an obvious factual discrepancy between the physical demands of the work described by Plaintiff and the demands of the classification of work provided by the vocational expert[.]" (*Id*. at 11).

Plaintiff's argument misapprehends the VE's testimony and the ALJ's finding at step four.  "Under the fourth step of the five-step analysis, 'the claimant has the burden to demonstrate an inability to return to h[is] previous specific job and an

- 6 -

inability to perform h[is] past relevant work generally.'" *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (quoting *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)). "This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Jasinski*, 341 F.3d at 185.

Here, the VE reviewed Claimant's case file and listened to his testimony, and testified that Claimant's past relevant work at Waste Management corresponded to "Manager, Department: D.O.T.[3] code 189.167-022, . . . a sedentary job with an [specific vocational preparation] of seven." (Dkt. 6 at 67). The VE further testified that Claimant actually performed this job "at the medium level and the [specific vocational preparation] is probably lower level six." (*Id.*). The ALJ relied on this testimony from the VE at step four to conclude that Claimant was capable of performing this past relevant work *as generally performed* in the national economy, but not as actually performed. (*Id.* at 30).

Plaintiff's arguments regarding the ALJ's step four analysis conflate the analysis between the requirements of the job as generally performed in the national economy and as actually performed by Claimant. Plaintiff argues at length that Claimant's work at Waste Management did not involve sitting and thus was not performed at the sedentary level. (*See, e.g.,* Dkt. 10-1 at 15-16 ("There was no indication that he was permitted to sit at any point during his shift yet alone 6 hours out of an 8 hour workday as required for sedentary work.")). But the VE did not

---

[3]    The Dictionary of Occupational Titles ("D.O.T.") is "an official publication of the Department of Labor." *Jasinski*, 341 F.3d at 183.

testify, and the ALJ did not find, that Claimant actually performed this job at the sedentary level. To the contrary, the VE testified and the ALJ found that Claimant actually performed this job at the medium level.[4] In other words, the VE and the ALJ simply did not make the error that Plaintiff asserts they did.

Plaintiff also argues that the VE should not have determined that Claimant's role at Waste Management corresponded to the "Manager, Department" position identified in the D.O.T., contending that "[w]hen comparing the known information regarding [Claimant's] past work at Waste Management Resources to the VE's classification of [Claimant's] past work at Waste Management Resources, there is not an overlap in the duties described by the DOT, and there are multiple other occupations listed in the DOT that more closely resemble the actual job performed by [Claimant]." (Dkt. 10-1 at 13). But that is precisely the purpose of seeking out the testimony of a VE, who is an expert in the field. In reviewing the D.O.T.'s description of "Manager, Department" job and the other jobs identified by Plaintiff (*see* Dkt. 10-1 at 17-18), none appears to correspond perfectly with Claimant's past relevant work at Waste Management.  The Court finds no error in the ALJ's acceptance of the VE's testimony that of the choices, the "Manager, Department" position was the

---

[4]    Plaintiff also argues that the ALJ should have performed a more in-depth inquiry into how Claimant actually performed this job from an exertional standpoint. (*See* Dkt. 10-1 at 13-14). Again, the ALJ did not find that Claimant was able to perform this past relevant work as actually performed. Accordingly, any error in this regard had no impact on the outcome of the ALJ's analysis and was harmless.

appropriate classification.[5]

Plaintiff relies on *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87 (2d Cir. 2019) to contend that the ALJ erred in this case. (*See* Dkt. 10-1 at 11-2; Dkt. 13 at 9-10). But *Lockwood* is inapposite. In *Lockwood*, the Second Circuit held that an ALJ must explain how he or she resolved a conflict between a VE's testimony and the D.O.T. *See Lockwood*, 914 F.3d at 94. But no such conflict exists in this case. Instead, the only factual discrepancy that Plaintiff has identified here is a discrepancy between Claimant's description of how he actually performed his past relevant work and the D.O.T.'s description of how the job is performed in the national economy. The Second Circuit held in *Jasinksi* that such a discrepancy does not constitute a conflict that the ALJ must resolve. *Jasinski*, 341 F.3d at 185.

Finally, Plaintiff's step four argument fails to address the ALJ's finding that Claimant was capable of performing his past relevant work as a stock clerk as he actually performed it. (*See* Dkt. 6 at 30). Plaintiff has identified no alleged error in this conclusion by the ALJ, and it would independently warrant a denial of Claimant's application at step four.  As such, even if the Court were to agree with Plaintiff regarding the Waste Management job, remand would not be warranted based on the step four analysis.

---

[5]     In any event, and as Plaintiff acknowledges, the jobs that Plaintiff claims are better fits are all performed at the light exertional level (*see* Dkt. 19-1 at 17-18), and none would be incompatible with the ALJ's RFC finding as generally performed. Accordingly, there would have been no difference in the ALJ's holding had he determined that one of these alternative positions was the appropriate reference point.

### B.    Assessment of State Agency Medical Opinions

Plaintiff's second argument is that the ALJ failed to comply with the Commissioner's regulations when assessing the medical opinions of consultative examiner Dr. Harbinder Toor, state agency reviewing physician Dr. M. Puttaniah, and state agency reviewing physician Dr. A. Vinluan. (Dkt. 20-1 at 20-27). In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").

The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or

her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).  Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

Dr. Toor examined Claimant on December 26, 2019. (Dkt. 6 at 321-24). He opined that Plaintiff had "moderate to marked limitations standing, walking, squatting, walking up stairs and down stairs," that pain would interfere with Claimant's balance, and that Claimant had "difficult doing daily routine which requires fine visual acuity." (*Id.* at 323). The ALJ found this opinion somewhat persuasive, explaining that it was inconsistent with the opinion of ophthalmologist Dr. Ralph S. Viola and Claimant's testimony with respect to visual acuity. (*Id.* at 29).

Plaintiff argues that in assessing Dr. Toor's opinion, the ALJ "failed to explain how the moderate-to-marked limitations relating to standing and walking were unsupported or inconsistent with the record as a whole." (Dkt. 10-1 at 21). But the ALJ did not reject Dr. Toor's opinion regarding moderate-to-marked limitations related to standing and walking. "There is caselaw finding such limitations consistent with light work," *Ana C. v. Bisignano*, No. 24-CV-6011LGF, 2026 WL 472588, at *7 (W.D.N.Y. Feb. 19, 2026) (collecting cases), and it was reasonable for the ALJ to

- 11 -

interpret Dr. Toor's opinion in this fashion. Indeed, the ALJ reasonably concluded that a more restrictive interpretation of Dr. Toor's opinion would not be persuasive, because it would be inconsistent with the other opinions of record and the objective medical evidence. (*See* Dkt. 6 at 27-29). That medical evidence included a negative x-ray of Claimant's right knee and treatment records inconsistent with greater restrictions. (*See id.*).

As to Dr. Puttaniah, she opined that Claimant had "limitations of frequent climbing stairs, occasional climbing ladders, kneeling, crouching, crawling and with vision in left eye only." (Dkt. 6 at 82). The ALJ found Dr. Puttaniah's opinion somewhat persuasive, explaining in detail why he had concluded that Claimant had greater limitations than those identified by Dr. Puttaniah. (*Id.* at 27-28). The ALJ discussed in detail conflicts between Dr. Puttaniah's opinion and the medical evidence of record, including Claimant's testimony and Dr. Toor's examination results and opinion. (*Id.*).

Plaintiff argues that "the ALJ failed to discuss why Dr. Toor's assessment of moderate-to-marked limitations relating to standing and walking were unsupported or inconsistent with any portion of Dr. Puttanniah's opinion." (Dkt. 10-1 at 23). This argument rests on the incorrect assertion that the ALJ rejected Dr. Toor's assessment of moderate-to-marked limitations in standing and walking. As the Court has already explained, the ALJ did not do so, but instead made an RFC finding that incorporated those restrictions by limiting Claimant to a range of light work. This argument therefore fails to establish error by the ALJ.

Turning to Dr. Vinluan, he opined that Claimant "was limited to work at a light level of exertion that limits the claimant to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling." (Dkt 6 at 28; *see id*. at 101-04). Dr. Vinluan concluded that Claimant had no visual limitations. (*Id*. at 103-04). The ALJ found Dr. Vinluan's opinion persuasive, explaining that it was consistent with Claimant's treatment records and supported by Dr. Viola's consultative examination and  Dr. Toor's examination results "and the accompanying negative x-rays of the claimant's right knee." (*Id*. at 28).

Plaintiff argues that "it is unclear how Dr. Vinluan's opinion indicating that [Claimant] could perform a range of light work is consistent with Dr. Toor's assessment of moderate-to-marked limitations relating to standing and walking." (Dkt. 10-1 at 23-24). The Court disagrees. In assessing Dr. Vinluan's opinion, the ALJ cited to 2018 treatment records from Dr. Catherine Humphrey in which she noted that Claimant had a preserved range of motion and released him back to work. (*See* Dkt. 6 at 28, 300). The ALJ further cited 2019 treatment records from Dr. Zachary Koehn in which Claimant reported that his leg would "give out" when he stood for a full eight hours at a manufacturing job. (*Id*. at 28, 312).  The ALJ also cited to Dr. Toor's examination records showing that Claimant had full strength in his lower extremities and no evident muscle atrophy, and the accompanying negative x-ray of Claimant's right knee. (*Id*. at 28, 321-24). Based on the evidence of record and the ALJ's discussion, the Court is able to discern how the ALJ concluded that Claimant was capable of a range of light work, and how the ALJ concluded that this

determination was consistent with the opinions of both Dr. Toor and Dr. Vinluan.

In sum, Plaintiff has failed to identify any reversible error in the ALJ's assessment of the state agency medical opinions. The Court thus finds no basis to disturb the Commissioner's denial of Claimant's application for DIB.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. 12) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge


Dated:   Rochester, New York
         March 31, 2026